LEBEL v. SWINCICKI.

1. AUTOMOBILES—INTERSECTIONS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—EVIDENCE.

Issue of freedom from contributory negligence of plaintiff's decedent, a motorist, killed at night at an intersection, *held*, properly submitted to jury for determination from testimony submitted as well as the physical facts disclosed by the proofs.

2. SAME—NEGLIGENCE—INTERSECTIONS—EVIDENCE.

Negligence of defendant southbound motorist, required to stop before entering intersection, *held*, to clearly appear from record presented in action under death act (CL 1948, § 691.581 *et seq.*).

3. SAME—INTERSECTIONS.

A motorist on through highway is not required to anticipate that a motorist on an intersecting highway would enter an intersection in disregard of highway traffic signs and at a high rate of speed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic § 712.
[2] 5A Am Jur, Automobiles and Highway Traffic § 1013.
[3] 5A Am Jur, Automobiles and Highway Traffic § 204.
Liability for accident at street or highway intersection as affected by reliance on or disregard of traffic sign, signal, or marking. 164 ALR 8.
[4] 16 Am Jur, Death § 223.
Recovery for wrongful death as affected by receipt of money on insurance policy. 18 ALR 686, 95 ALR 579.
[5] 16 Am Jur, Death § 361 *et seq.*
[6] 39 Am Jur, New Trial § 159.
[7] 41 Am Jur, Privacy § 32 (Supp).
Blood grouping tests as violation of right of privacy. 46 ALR2d 1011, 1016.
[8] 41 Am Jur, Privacy §§ 15, 16.
Right of privacy. 138 ALR 22, 168 ALR 446, 14 ALR2d 750.
[9] 16 Am Jur, Death § 328.

4. DEATH—DAMAGES—INSURANCE.

Payments made under insurance policies on the life of plaintiff's intestate decedent may not affect the recovery of damages under the death act, especially where the insurance payments were not intended to operate for the benefit of a tort-feasor who caused the death of the insured and were not subject to apportionment among the children of deceased in the manner provided by the death act with reference to damages recoverable thereunder (CL 1948, § 691.581 *et seq.*).

5. SAME—DAMAGES—INSTRUCTION—STATUTES—PREJUDICE.

Charge to jury in action against defendant motorist with reference to manner of computing damages under death act *held*, not prejudicial to defendant (CL 1948, § 691.581 *et seq.*).

6. SAME—NEW TRIAL—DAMAGES—NEWLY-DISCOVERED EVIDENCE—SOCIAL SECURITY PAYMENTS.

Denial of new trial on ground of newly-discovered evidence in action under death act *held*, not error, where fact that social security benefit payments to children, claimed to affect pecuniary loss, were discoverable before trial and were made solely for the benefit of the recipients and not for the benefit of a tort-feasor who caused the death of the children's father (CL 1948, § 691.581 *et seq.*).

7. EVIDENCE—INVASION OF PRIVACY—BLOOD SAMPLE FROM UNCONSCIOUS PERSON.

The obtaining of testimony through extraction of a blood sample from unconscious defendant for use in civil action under the death act while he was in a hospital but a sample which was not taken for the purpose of treatment or involving the physician-patient relation amounted to an unconstitutional invasion of his personal rights (Const 1908, art 2, § 10, as amended in 1952).

8. CONSTITUTIONAL LAW—RIGHT OF PRIVACY—DEATH.

The right of privacy is a personal one which ends with the death of the person to whom it is of value (Const 1908, art 2, § 10, as amended in 1952).

9. NEGLIGENCE—EVIDENCE—BLOOD SAMPLE FROM UNCONSCIOUS PERSON.

It was error for trial court to overrule objections by counsel for defendant in action under the death act to admission of testimony as to alcoholic content of his blood at time of accident, where analysis of his blood, taken

from him while he was unconscious, not for purpose of treatment of injuries received, but to establish negligence on his part, however, such error was not reversible, where negligence was otherwise conclusively established, in part, by defendant's own testimony (CL 1948, § 691.581 *et seq.*).

Appeal from Osceola; Neal (Max E.), J. Submitted October 9, 1958. (Docket No. 28, Calendar No. 47,119.) Decided December 2, 1958.

Case by Edward R. Lebel, administrator of the estate of John Lebel, deceased, against Albert Swincicki under the death act for damages resulting from automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*James C. Herrinton,* for plaintiff.

*Miltner & Miltner,* for defendant.

CARR, J. This is an action for damages based on the alleged negligent killing of plaintiff administrator's decedent. The declaration filed in the case alleged that on the 27th of August, 1955, at about 10 o'clock in the evening, defendant was driving an automobile in a southerly direction on trunk-line highway M–66, that at the intersection of said highway with M–115 in Osceola county he operated his automobile in such a careless and negligent manner as to run into a car proceeding in a westerly direction on M–115 and driven by plaintiff's intestate John M. Lebel, and that as a result of said collision John M. Lebel, his wife, and 2 children were killed. Plaintiff sought the recovery of damages in accordance with the provisions of the so-called death act* of the State of Michigan. The declaration also averred

---

* PA 1848, No 38, as amended by PA 1939, No 297 (CL 1948, § 691.581 *et seq.* [Stat Ann and Stat Ann 1957 Cum Supp § 27.711 *et seq.*]).

freedom from contributory negligence on the part of
John M. Lebel and set forth in some particularity the
various respects in which negligence on the part
of defendant was claimed. It alleged that decedent
left surviving him 3 minor children who had sus-
tained pecuniary loss because of the death of their
father.

Defendant's answer to the declaration admitted
that plaintiff's decedent had left 3 children as his
survivors but denied the claim of pecuniary loss and
damages sustained thereby, and further denied all
claims of negligence on his part. The case was
tried before a jury. At the conclusion of plaintiff's
proofs defendant moved for a directed verdict on
the ground that freedom from contributory negli-
gence on the part of John Lebel had not been
established. Decision was reserved by the trial
judge* and like action was taken on renewal of the
motion following the introduction of testimony by
defendant. The jury returned a verdict of $10,000.
Defendant's motions for judgment notwithstanding
the verdict and for a new trial were denied, and
defendant has appealed from the judgment entered
against him.

As appears from the joint appendix filed in this
Court by counsel representing the respective parties,
it is stipulated that the accident occurred at the time
and place alleged in the declaration, and that the
night was clear and dry. It is further agreed that
M-66 runs north and south at its intersection with
M-115, and that the latter highway runs from south-
east to northwest. The main traveled portion of
each highway is approximately 22 feet in width.
North of the intersection M-66 drops slightly and
then rises. It also rises gradually to the south. The
parties further stipulated as to the location of cer-

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1957
Cum Supp § 27.1461 *et seq.*).—Reporter.

tain buildings at or near the intersection, a restaurant being located on the northeast corner, and a gasoline station on the southeast corner. Following the impact defendant's car came to a stop on its wheels, on the southwest embankment and facing the southwest. The Lebel car was resting on its top approximately 75 to 150 feet to the west. It is also agreed that M–115 is a through highway and that stop signs were placed on M–66 on either side of M–115, in proper locations. Also on M–66 and farther from the intersection than were the "Stop" signs there was situated, on each side of the intersection, a 6x8-foot lattice-wood sign on which appeared at the time of the accident "Stop Ahead".

On behalf of appellant it is claimed that there was no competent evidence justifying submitting to the jury the question of John Lebel's freedom from contributory negligence. It is contended that there was no direct proof establishing that decedent's car was being driven on M–115, and by way of argument it is said that he may have been driving on M–66 as he approached the intersection. In submitting the case to the jury the trial judge stated in some detail the claims of both parties, leaving it to the jury to determine the issue as a matter of fact. The verdict indicates that it was based on a finding that plaintiff's claim as to the material facts was correct. In denying the motion for a new trial the circuit judge expressed the opinion that the question as to decedent's freedom from contributory negligence was properly submitted to the jury to be determined from the testimony in the case as well as from the physical facts disclosed by the proofs. We think that such conclusion was correct.

Defendant Swincicki was called by plaintiff for cross-examination.* He stated that at the time of

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

the accident he was driving 55 miles per hour, and that he did not see the signs on M–66 or at least could not recall that he did so. He also stated that immediately before the impact he saw a flash of light come from the left. Such testimony would indicate that the Lebel car was proceeding on M–115. Later in his testimony defendant declared that he did not know from what direction the light was approaching, but admitted that it was: "Probably coming from the left." He also admitted that during the day, August 27th, he had had "probably 4 bottles of beer," the last one between 9 and 10 o'clock in the evening. Defendant's testimony is of such nature as to justify submitting to the jury the question of freedom from contributory negligence on the part of plaintiff's decedent. The negligence of defendant clearly appears.

If the Lebel car was proceeding on M–115, as claimed by plaintiff, the driver was not required to anticipate that a motorist approaching on M–66 would enter the intersection in disregard of the traffic signs and at a high rate of speed. *Staunton* v. *City of Detroit,* 329 Mich 516; *Hicks* v. *Gillespie,* 346 Mich 593. It is a fair inference also from defendant's testimony, considered in its entirety, that John Lebel was not driving in a northerly direction on M–66 immediately prior to the collision. Defendant persisted in his claim that he saw only a flash of light immediately before the impact. Had the Lebel car been approaching from the south he could scarcely have failed to observe its headlights which under the physical facts would have been directly in front of him. Obviously he did not see any headlights, a fact that tends to clearly indicate that the suggestion made by way of argument as to the highway on which the Lebel car approached the intersection is not well-founded.

The manner in which the accident occurred and the position of the automobiles at the time of the accident is further indicated by the physical facts, that is, by the nature of the damage sustained by each vehicle and by the positions of the cars following the collision. The trial court was not in error in leaving the question of John Lebel's freedom from contributory negligence to the jury to be determined as a matter of fact on the basis of the proofs.

It is further insisted on behalf of the defendant that the verdict returned by the jury, on which judgment was entered, was excessive. Such claim appears to be predicated principally on the fact that under insurance policies on the life of their father the 3 children who are survivors of plaintiff's decedent received a total of $5,400, and that such sum should have been deducted from the amount of the financial loss, as indicated by the proofs, that was sustained by said children as a result of their father's death. It is argued that had such deduction been made, the verdict, under the proofs, must necessarily have been less than $10,000. In making this argument counsel for defendant direct attention to the fact that John Lebel was divorced from the mother of the children in question, and that the decree entered in the case referred to the insurance policies and in terms directed that they should be kept in force and effect until the youngest of the 3 children reached the age of 21. The decree further required that the father pay the sum of $20 per week toward the support of the 3 children until the youngest reached the age of 17. Obviously the provision with reference to the insurance was not designed to be in lieu of the support payments in the event of inability for any reason to make such payments. It is likewise apparent that the purpose to be served by the insurance was not intended to operate to the benefit of anyone negligently or otherwise wrongfully caus-

ing the death of John Lebel. We are not in accord with defendant's claim that the payments made under the insurance policies can affect the recovery of damages to which decedent's children are entitled. It may be noted further in this connection that the insurance payments were not subject to apportionment among the children in the manner provided by the statute with reference to damages recovered for the benefit of persons suffering pecuniary loss as a result of a death caused by negligence or otherwise wrongful conduct, and entitled to recover therefor.

Complaint is made that the trial judge did not properly instruct the jury with reference to the manner of computing damages. An examination of the charge as given brings us to the conclusion that defendant may not claim that he was unduly prejudiced thereby. Neither was there error in denying the motion for a new trial on the ground of newly-discovered evidence relating to the matter of pecuniary loss. It is the claim of defendant that following the death of their father the 3 children sustaining such loss because of his death have been paid social security benefits, and that such payments should be considered in determining the amount of recovery. It does not clearly appear, however, that the facts with reference to such payments might not have been discovered before trial. The trial judge was correct in so holding. It may be suggested also that such payments were made solely for the benefit of the recipients. In this respect they are analogous to the payments made under the insurance policies, above discussed.

This brings us to a consideration of a matter involving the competency of evidence offered and received on the trial. Following the accident defendant was removed from the scene to a hospital at Cadillac. There a sample of his blood was taken

by a nurse who testified that she did so at the direction of a physician. Said sample was placed in a vial and was delivered to a member of the Michigan State police, by whom it was taken to the State police post at Cadillac. From there it was sent to the State health department at Lansing, where it was analyzed by a specialist in toxicology who was in charge of the State crime detection laboratory. The specialist was a witness on the trial and over objection was permitted to testify that the blood contained by weight .15% of clear alcohol, and that such percentage indicated intoxication.

On behalf of appellant it was contended that he was unconscious at the time the blood was taken from him, that he knew nothing about it and at no time gave consent thereto, and that the taking was in violation of the right of security of his person. Reliance was placed on article 2, § 10, of the Michigan Constitution (1908), which reads as follows:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation: Provided, however, That the provisions of this section shall not be construed to bar from evidence in any court of criminal jurisdiction, or in any criminal proceeding held before any magistrate or justice of the peace, any narcotic drug or drugs, any firearm, rifle, pistol, revolver, automatic pistol, machine gun, bomb, bomb shell, explosive, blackjack, slungshot, billy, metallic knuckles, gas-ejecting device, or any other dangerous weapon or thing, seized by any peace officer outside the curtilage of any dwelling house in this State."*

That defendant was unconscious at the time the blood sample was taken from him is not in dispute.

* As amended in 1952.—REPORTER.

The testimony of a witness produced by plaintiff, a State trooper, indicates that defendant had a fractured skull and that his face was badly cut. On behalf of plaintiff it is contended, however, that the taking of the blood sample under the circumstances did not render incompetent the proof relating to the test. There is no testimony in the record indicating that it was taken in connection with the treatment of defendant's injuries. The manner in which the sample was handled seems to negative any possible claim of that nature. We are not, in consequence, concerned with the privilege of a patient with respect to testimony of his physician. Whether he was in any way treated by the doctor who directed the taking of the sample does not appear. Said doctor was not a witness in the case.

Analogous questions have arisen in a number of cases, most of which have involved criminal prosecutions. In *People* v. *Corder,* 244 Mich 274, it was held that a physical examination of a defendant in a criminal case without his consent violated his rights as guaranteed by article 2, § 16, of the State Constitution (1908), and that testimony based on such examination was incompetent. It was recognized that an accused may consent to such an examination, but the majority of the Court concluded that he had not done so and, in consequence, the conviction was reversed.

In *Breithaupt* v. *Abram,* 58 NM 385 (271 P2d 827), blood was taken from an unconscious person involved in an automobile accident, and introduced in evidence in a subsequent prosecution for manslaughter. The supreme court of New Mexico, in a habeas corpus proceeding, held that the Constitution of that State was not thereby violated, and that there was no denial of due process of law under the Federal Constitution. In *Breithaupt* v. *Abram,* 352 US 432 (77 S Ct 408, 1 L ed2d 448), the supreme court

of the United States, 3 justices dissenting, upheld the order of the State court. It was stated in the majority opinion that the evidence against Breithaupt, having been obtained in violation of the 4th Amendment to the Federal Constitution, would be subject to exclusion in a criminal prosecution in a Federal court. However, the majority declined to hold that the conviction in the State court should be held improper under the due process clause of the 14th Amendment. The claim by petitioner that the violation of the 4th Amendment entitled him to rely on the 14th was rejected on the authority of *Wolf* v. *Colorado,* 338 US 25 (69 S Ct 1359, 93 L ed 1782), in which it was held that in a prosecution in a State court for a criminal offense under State law the 14th Amendment did not forbid the admission of relevant evidence even though obtained by an unreasonable search and seizure. In expressing such conclusion the court cited the decision in *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L ed 652, LRA 1915B, 834, Ann Cas 1915C, 1177), holding that evidence secured in violation of the 4th Amendment to the Federal Constitution was inadmissible in Federal court, was not applicable, by virtue of the 14th Amendment, to proceedings in State courts.

It is significant to note that the provisions of article 2, § 10, of the State Constitution, relied on in the instant case, are identical in substance with those of the 4th Amendment to the Federal Constitution. The conclusion would therefore seem to follow that in accord with the opinion in the *Breithaupt Case* testimony taken in a criminal case in Michigan in disregard of the above-quoted provision of the State Constitution should be held inadmissible.

In the case at bar a criminal prosecution is not involved. The question is presented, in consequence, whether the obtaining of testimony in violation of the constitutional provision in question (art 2, § 10)

renders it inadmissible in a civil action. That the blood sample was taken in the case at bar in violation of defendant's right of security of his person is apparent. He was unconscious at the time but that fact did not permit others to invade his personal rights. We see no difference in principle between obtaining a blood sample under the circumstances here involved and taking it from a conscious person by force.

The application of article 2, § 10, of the State Constitution was discussed at some length in *People* v. *Marxhausen,* 204 Mich 559 (3 ALR 1505). In connection therewith the 4th and 5th Amendments to the Federal Constitution were also considered by way of analogy. It was held that evidence secured as the result of an illegal search and seizure, in violation of the defendant's constitutional rights, was improperly obtained, and that the order of the trial court directing the return of the articles so taken from defendant was not erroneous.

In *Metropolitan Life Ins. Co.* v. *Evans,* 183 Miss 859 (184 So 426), plaintiff brought an action on an insurance policy, claiming the right to recover under a permanent disability provision thereof. On cross-examination he was asked to permit a physician to make a physical examination as he sat in the witness chair, such examination to have particular reference to certain portions of his person. The request was refused, and counsel for the insurance company then asked the court to compel the plaintiff to submit to such an examination. The trial court declined to make such an order, and such denial was assigned as error on the appeal. The supreme court of the State sustained the action of the trial judge on the ground that plaintiff had not in any way (p 870) waived "the inviolability of his person" and that the examination could not have been made as requested without exposure of some portions of the person.

In *Haynes* v. *Haynes,* 43 NYS2d 315, the plaintiff husband in a divorce action sought an order from the court for a physical examination of the defendant. The request was denied, the court sustaining the objection of defendant to such a physical examination on the ground that her constitutional rights would thereby be violated.

Counsel for appellee have called attention to *Cluett* v. *Rosenthal,* 100 Mich 193 (43 Am St Rep 446). That case, however, did not involve the right of security of the person. It appears that certain books of account and other papers kept in the course of business transactions were offered in evidence and objected to on the ground that they had been improperly obtained. It does not appear that any motion for the suppression or return of said books and papers had been made in advance of trial. On appeal it was held that the admission of the evidence was not error, the Court saying (p 198):

"It is not the policy of the courts, nor is it practicable, to pause in the trial of a cause, and open up a collateral inquiry upon the question of whether a wrong has been committed in obtaining the information which a witness possesses."

The decision is not of controlling importance in the case at bar for the reason that, in order to lay the foundation for the offer of the evidence of the blood test, plaintiff brought out clearly the circumstances under which the blood was taken from the person of the defendant. The invasion of the right of security of the person, guaranteed by our State Constitution, clearly appears, and further inquiry in extension of the testimony offered was not required.

The trial judge in concluding that the testimony was competent relied on *Fretz* v. *Anderson,* 5 Utah2d 290 (300 P2d 642). In that case the removal of blood was from the body of one who had been killed

as a result of an automobile accident. The Utah court, in reaching its conclusion that the result of the test was competent to be shown in evidence as bearing on the question of intoxication, pointed out that the right of privacy is a personal one which ends with the death of the person to whom it is of value, and that it may not be claimed by his estate or by his next of kin. Such is not the situation presented in the case at bar.

In *Kuroske* v. *Aetna Life Insurance Co.*, 234 Wis 394 (291 NW 384, 127 ALR 1505), a sample of blood was taken from a person injured in a traffic accident, and testimony as to the alcoholic content thereof was introduced in evidence in subsequent litigation. The court, on appeal, held the proof competent. It appears that after the accident the injured man walked to an ambulance with some assistance and sat on the seat with the driver until the hospital was reached. It does not appear from the opinion of the court that the blood sample was taken without his consent, or while he was unconscious. In *Hamilton* v. *Becker* (1957), 249 Iowa 516 (86 NW2d 142), blood was removed from the body of one who had been killed in an automobile accident. The court determined that the results of the test were not competent because taken pursuant to statute requiring a written report of accidents to the State department of public safety and declaring such reports inadmissible in any civil case. No violation of the right of security of the person was involved.

While there is a lack of authority bearing directly on the proposition, we think that under a constitutional provision worded as is article 2, § 10, of the Constitution of Michigan, the taking of blood for purposes of analysis from the person of one who is unconscious at the time constitutes a violation of his rights, and that testimony based on the analysis of such blood should not be admitted in evidence.

In the instant case the trial judge was in error in overruling the objections made by counsel for defendant. It does not follow, however, that a reversal of the case is required because of such error. Obviously the purpose of the testimony with reference to the blood test was to establish negligence on the part of the defendant. Without reference to such blood test the proofs were conclusive on that issue. Defendant's testimony established that he was proceeding without keeping a reasonable and proper outlook for other traffic on the highway, that he disregarded the highway signs which required him to stop before crossing M–115, and that under the circumstances he failed to exercise reasonable care in the operation of his automobile. He admitted also that he had been drinking an intoxicating beverage, the last such drink being taken perhaps an hour or less before the accident occurred. The State trooper who talked with defendant following the accident concluded from his observations that defendant was then under the influence of liquor. While defendant denied that he was intoxicated, nonetheless the issue as to his drinking was in the case, in part by his own admissions. In any event, there was no chance for question as to his negligence, and the results of the blood test could scarcely be given the effect of tending to show a fact that had not already been established beyond question.

We find no reversible error in the case and the judgment is affirmed, with costs to appellee.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.