PEOPLE v KEEN

Docket No. 56474. Argued January 7, 1976 (Calendar No. 2).—Decided
    June 3, 1976.

    Jimmy E. Keen was charged with manslaughter in Cass Circuit
        Court, James E. Hoff, J. Defendant's motion to suppress the
        results of a breath test taken with his consent was denied. The
        Court of Appeals, Holbrook, P. J., and R. L. Smith, J. (T. M.
        Burns, J., dissenting), affirmed as to that issue (Docket No.
        18176). Defendant appeals. *Held:*

        1. Where a blood alcohol test is administered pursuant to the
        "implied consent law", MCL 257.625a; MSA 9.2325(1), the test
        result is not admissible in a criminal prosecution other than for
        driving under the influence of intoxicating liquor or driving
        while impaired. The statute limits the authority of police
        officers to request the taking of blood and limits the use that
        may be made of the test result.

        2. No blood alcohol test may be given to a person who refuses
        consent under the "implied consent law", MCL 257.625d; MSA
        9.2325(4); under the statute the issue is not viewed in the
        context of search and seizure, but solely in terms of consent.
        Consent determines to what extent the result of the test
        administered under the statute can be used. Whether or not
        consent is constitutionally required, the Legislature may limit
        the right of police officers and others to take blood from
        allegedly drunken drivers and may decide that revocation of a
        driver's license for unreasonable refusal to consent appropri-
        ately protects the public interest.

        3. In the context of an arrest for drunk driving, advice that
        results of a consensual blood alcohol test will be used to
        determine the innocence or guilt of the driver means innocence
        or guilt of the offense for which the driver was arrested. A
        police officer has no statutory authority to request that a
        person submit to a blood alcohol test unless the person is
        arrested for driving under the influence of intoxicating liquor

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 21 Am Jur 2d, Criminal Law §§ 357, 364, 366.
    Blood grouping tests, 46 ALR2d 1000.

or driving while impaired. The officer must advise the driver that if he consents to a test, the results shall be admissible in prosecutions for drunk driving and driving while impaired.

The Court of Appeals is reversed, and the case is remanded for trial.

56 Mich App 84; 223 NW2d 700 (1974) reversed.

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—BLOOD ALCOHOL TEST—IMPLIED CONSENT.

The result of a blood alcohol test which is administered pursuant to the "implied consent law" is not admissible in a criminal prosecution other than for driving while under the influence of intoxicating liquor or for driving while impaired (MCL 257.625a *et seq.;* MSA 9.2325[1] *et seq.).*

2. INTOXICATING LIQUORS—EVIDENCE—BLOOD ALCOHOL TEST—IMPLIED CONSENT—SEARCHES AND SEIZURES.

No blood alcohol test shall be given to a person charged with driving under the influence of intoxicating liquor who refuses to consent; under the "implied consent law", the issue is not the constitutionality of a search and seizure but whether there has been a consent under the statute and the consent given determines to what extent the results of the test are admissible as evidence (MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

3. INTOXICATING LIQUORS—BLOOD ALCOHOL TEST—IMPLIED CONSENT—CONSTITUTIONAL LAW—SEARCHES AND SEIZURES.

The Legislature has limited the right of police officers and others to take blood from allegedly intoxicated drivers to test for alcohol content even if the driver's consent is not constitutionally required; the Legislature may decide that revocation of a driver's license for unreasonable refusal to consent appropriately protects the public interest in enforcement of drunk driving laws (MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

4. INTOXICATING LIQUORS—BLOOD ALCOHOL TEST—IMPLIED CONSENT—CONSENT.

A police officer has no statutory authority to request a driver to submit to a blood alcohol test unless the driver is arrested for driving under the influence of intoxicating liquor; the officer must advise the driver that if he consents to a test, the results shall be admissible in prosecutions for drunk driving and driving while impaired and that he has a right to refuse a test

(MCL 257.625a, 257.625c, 257.625d; MSA 9.2325[1], 9.2325[4], 9.2325[5]).

CONCURRING OPINION

COLEMAN and LINDEMER, JJ.

5. CRIMINAL LAW—EVIDENCE—BLOOD ALCOHOL TEST—IMPLIED CONSENT.

*The result of a blood alcohol test which is administered pursuant to the "implied consent law" is not admissible in a prosecution for manslaughter; the use of the result of a test in civil litigation is not at issue in an appeal of a criminal conviction.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael E. Dodge,* Prosecuting Attorney, for the people.

*Herbert Phillipson, Jr.,* for defendant.

LEVIN, J. The statute provides that the result of a blood alcohol test is admissible in evidence in "any criminal prosecution for driving a vehicle while under the influence of intoxicating liquor".[1]

The question on this appeal is whether a blood alcohol test is admissible in a prosecution for manslaughter.

We hold that where a blood alcohol test is administered pursuant to the statute the test result is not admissible in a criminal prosecution other than for driving while under the influence of intoxicating liquor (DUIL) or for driving while ability to operate a vehicle was impaired due to the consumption of intoxicating liquor (DI).[2]

---

[1] MCLA 257.625a; MSA 9.2325(1).

[2] Our holding is in accord with the opinion of Judge T. M. BURNS dissenting in the Court of Appeals.

"I am convinced that MCLA 257.625(a); MSA 9.2325(1) applies only to criminal prosecutions for DUIL or DI. In my opinion, it is quite clear that the Legislature intended, through the enactment of the 1967 amendment changing the wording of the statute from 'relating to' DUIL to 'for' DUIL, that the admissibility of Breathalyzer tests

I

In *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958), this Court ruled that the result of a blood alcohol test, based on a blood sample taken from an unconscious driver, was inadmissible in a civil action as the Michigan constitutional provision securing persons from unreasonable searches and seizures[3] precludes the drawing of blood without consent. The Court, on the authority of *Breithaupt v Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957), declared that the result of such a test would be inadmissible in a Federal prosecution. Subsequently, in *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), the United States Supreme Court concluded that the Fourth, Fifth, Sixth and Fourteenth Amendments had not been violated by the extraction of blood without consent from an apparently drunken driver and the admission in evidence in a drunk driving prosecution of the result of a chemical test of the blood.[4] We are asked to reconsider *Lebel* in light of *Schmerber.*

We see no need, however, to decide this case on constitutional grounds. Even if we were to conclude, on reconsideration of *Lebel,* that the drawing of blood from an apparently drunken driver does not violate his rights under the Michigan Constitution, the statute limits the authority of police officers to request the taking of blood and

and the corresponding statutory presumptions be limited to drunk-driving cases." Separate opinion of T. M. BURNS, J., *People v Keen,* 56 Mich App 84, 92, 96; 223 NW2d 700 (1974).

[3] Const 1908, art 2, § 10 (now Const 1963, art 1, § 11).

[4] Following an automobile accident Schmerber was taken to a hospital. A blood sample was withdrawn at the direction of a police officer, and introduced in evidence in a subsequent trial. Schmerber, who had refused to consent to the test, was convicted of driving under the influence of intoxicating liquor.

limits the use that may be made of a test result obtained pursuant to exercise of that authority.

## II

Section 625 of the Michigan Vehicle Code makes it an offense to drive a motor vehicle while under the influence of intoxicating liquor.[5]

In 1960, after *Lebel* was decided, § 625a was added.[6] It made admissible in DUIL prosecutions the result of a blood alcohol test administered with the written consent of the driver. It additionally provided that the driver be advised of his right to have or to refuse a test and established certain presumptions regarding the extent of intoxication based on the test result.

After *Schmerber* was decided, § 625a was modified[7] and §§ 625c–625g were added.[8] Section 625c

[5] MCLA 257.625; MSA 9.2325.

[6] MCLA 257.625a; MSA 9.2325(1).

[7] Section 625a was added by 1960 PA 148. It was first amended by 1964 PA 104.

As originally enacted the section required that the allegedly intoxicated person give consent to a chemical test in writing and acknowledge in writing "that he is not required by law to give his consent". This language was eliminated in 1964.

The 1964 amendment did provide, however, that "[t]he person charged shall be advised of his right to refuse to take any test provided for in this act" and both the 1960 and 1964 versions provided that "refusal on the part of any person to submit to any such test shall not be admissible in any criminal prosecution relating to driving a vehicle while under the influence of intoxicating liquor". Conforming to other changes made by the 1967 act (1967 PA 253), this provision was eliminated and the following language substituted:

"(4) The person charged shall be advised that his refusal to take a test as herein provided shall result in the suspension or revocation of his operator's or chauffeur's license or his operating privilege."

In 1966, § 625b was added making it an offense for any person to operate a motor vehicle "when, due to consumption of intoxicating liquor * * * he has visibly impaired his ability to operate the vehicle." 1966 PA 243.

The 1960 and 1964 versions provided that if there was at the time of the test 0.05% or less by weight of alcohol it would be presumed that the defendant was not under the influence; if there was in excess

provides that a person who operates a motor vehicle "is deemed to have given consent" to a blood alcohol test if he is arrested while driving under the influence of intoxicating liquor or while his ability to drive has been impaired due to the consumption of intoxicating liquor.

Section 625d provides, however, that "[a] person under arrest shall be advised of his right to refuse to submit to chemical tests; and if he refuses the request of a law enforcement officer to submit to chemical tests, no test shall be given".

If the driver refuses to take a test, a sworn report is required to be forwarded to the Secretary of State who shall give notice of the right to request a motor vehicle license revocation hearing.[9] If the driver does not timely request a hearing, the Secretary of State shall suspend or revoke

---

of 0.05% but less that 0.15% such fact shall not give rise to any presumption but could be considered with other competent evidence in determining the guilt or innocence of the defendant and if there was 0.15% or more it shall be presumed that the defendant was under the influence. The 1967 act retained the former presumption that the defendant was not under the influence if there was at that time 0.05% or less but reduced the area of no presumption to the range between 0.05% and less than 0.10%. If there was 0.10% or more it would be presumed that "the defendant's ability to operate a motor vehicle was impaired within the provisions of section 625b of this act due to the consumption of intoxicating liquor". The former rule that it would be presumed that the defendant was under the influence if there was 0.15% or more was retained.

In 1971 (1971 PA 154), the presumptions were changed as follows: (a) 0.07% or less, presumed that the defendant was not under the influence; (b) in excess of 0.07% but less than 0.10%, presumed that the defendant's ability to operate a motor vehicle was impaired within the provisions of § 625b due to the consumption of intoxicating liquor; (c) 0.10% or more, presumed that the defendant was under the influence.

[8] MCLA 257.625c–257.625g; MSA 9.2325(3)–9.2325(7).

[9] A hearing may be requested for the purpose of determining whether (i) the officer had reasonable grounds to believe that the person was driving under the influence or while his ability to drive had been impaired; (ii) the person was placed under arrest on that account; (iii) he reasonably refused to submit to a test; and (iv) he was advised of his rights.

his license for a period of not less than 90 days nor more than 2 years.[10] After a requested hearing the Secretary of State may suspend, revoke or deny issuance of a driving license.[11]

## III

In this case, the officer requested and the driver consented to the test.

While §§ 625c *et seq* are sometimes called the "implied consent law" and § 625c provides that a person who operates a motor vehicle "is deemed to have given consent" to a blood alcohol test, companion § 625d in terms provides that "no test shall be given" to a person who refuses to consent. Under the statute the issue is not viewed in the context of search and seizure, but solely in terms of consent.

The people rely on *State v Spry,* 87 SD 318, 323–325; 207 NW2d 504, 507–508 (1973). The South Dakota statute requires the officer to advise the driver of his right to refuse to submit to a blood alcohol test and the consequences of such refusal in respect to the revocation of his driving privileges. Before Spry declined to exercise his right to refuse, he had asked the officer, who was aware that the driver of the other car had died, whether anyone was seriously injured and the officer responded, "I'm afraid so". The South Dakota Supreme Court said, "It is clear that the results of the blood test were admissible despite the failure of the police officer to inform the defendant that the driver of the other car had died as a result of the accident. The statute makes no requirement

---

[10] MCLA 257.625f; MSA 9.2325(6).

[11] *Id.*

A 1968 act, 1968 PA 335, made certain changes in the procedures regarding license suspension hearings and appeals.

that the subject be informed of any more than
that he has a right to refuse and that his license
will be suspended if he does."

The South Dakota Court considered and rejected
another contention of the defendant, adding:
"Aside from all that, however, we hold that a
defendant's consent or refusal is irrelevant to the
admission of the results of the blood test if the test
is taken pursuant to a valid arrest".

We can accept that dictum if the South Dakota
Court meant that consent or refusal is irrelevant
for purposes of the Federal constitution and the
South Dakota statute. But consent is not irrele-
vant under the Michigan statute. The South Da-
kota statute speaks of presumptions that arise
from certain test results but is silent regarding the
admissibility of test results. The Michigan statute
specifically provides that test results are admissi-
ble in DUIL prosecutions. The South Dakota stat-
ute does not provide that the driver be advised
regarding the use that may be made of test re-
sults. The Michigan statute provides that the
driver be informed that test results would be
admissible in a DUIL prosecution.

Even though the taking of an automobile driv-
er's blood without consent does not violate the
Federal Constitution and even if on reconsideration
of *Lebel* we were to conclude that it did not violate
the Michigan Constitution, it would still be within
the legislative prerogative to limit the right of
police officers and others to take blood from al-
legedly drunken drivers. Whether consent is or is
not constitutionally required, the Legislature may
decide that the interest in enforcement of the
drunk driving laws does not justify subjecting
unconsenting drivers to blood alcohol tests—impo-
sition of the sanction of revocation of driver's

license for unreasonable refusal to consent to a
test appropriately protects the public interest.[12]

Under the Michigan statute, consent is not only
relevant but determinative of whether and to what
extent the result of a test administered under the
authority of the statute can be used.

The scope of the consent given in *Keen,* whether
it extended to use of the test result in a criminal
prosecution other than for DUIL, depends on a
construction of the statute and what occurred
when Keen's consent was solicited and given.

## IV

Since its original enactment in 1960, § 625a has
limited the use that may be made of the results of
a test administered with the driver's consent pur-
suant to the statute.

---

[12] While the Federal constitutional question was decided in *Schmer-
ber,* the principles espoused by the four dissenting justices might
dissuade legislators from dispensing with the present statutory re-
quirement of consent.

Chief Justice Warren reiterated *(Schmerber v California,* 384 US
757, 772; 86 S Ct 1826; 16 L Ed 2d 908 [1966]) the views he had
expressed in dissent in *Breithaupt:*

"that due process means at least that law-enforcement officers in
their efforts to obtain evidence from persons suspected of crime must
stop short of bruising the body, breaking skin, puncturing tissue or
extracting body fluids, whether they contemplate doing it by force or
by stealth". *Breithaupt v Abram,* 352 US 432, 440, 442; 77 S Ct 408; 1
L Ed 2d 448 (1957). Justices Black and Douglas, who joined in the
Chief Justice's *Breithaupt* opinion, dissented on the further ground
that the defendant's constitutional right against self-incrimination
had been violated. *Schmerber v California, supra,* p 773. Justice
Douglas, in a separate opinion, added: "We are dealing with the right
of privacy which, since the *Breithaupt* case, we have held to be within
the penumbra of some specific guarantees of the Bill of Rights.
* * * No clearer invasion of this right of privacy can be imagined
than forcible blood-letting of the kind involved here." *Schmerber v
California, supra,* pp 778–779. Justice Fortas also dissented: "As
prosecutor, the State has no right to commit any kind of violence
upon the person, or to utilize the results of such a tort, and the
extraction of blood, over protest, is an act of violence." *Schmerber v
California, supra,* p 779.

582          396 Mich 573          [June

OPINION OF THE COURT

Section 625a begins: "(1) In any criminal prosecution for[13] driving a vehicle while under the influence of intoxicating liquor". The qualifying words, prosecution for "driving a vehicle while under the influence of intoxicating liquor" are repeated in the opening clause of both the first and second sentences of subparagraph (3):

"(3) A person charged with driving a vehicle while under the influence of intoxicating liquor who takes a chemical test administered at the request of a police officer as provided in paragraph (1) and (2) hereof, *shall be informed that* he will be given a reasonable opportunity to have a person of his own choosing administer one of the chemical tests as provided in this section within a reasonable time after his detention, and *the results of such test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant.* Any person charged with driving a vehicle while under the influence of intoxicating liquor *shall be informed that* he has the right to demand that one of the tests provided for in paragraph (1) shall be given him, and *the results of such test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant."* (Emphasis supplied.)

We read the statute to mean that test results will be used only in determining guilt or innocence in a prosecution for driving a vehicle while under the influence of intoxicating liquor or for driving while ability to operate a vehicle was impaired due to the consumption of intoxicating liquor[14] and for

---

[13] The 1960 and 1964 enactments use the words "relating to". Keen contends that the change to "for" in 1967 makes clearer the limited use which may be made of test results.

[14] In adding §§ 625c through 625g the Legislature did not make conforming amendments to §§ 625 and 625a adding after "for driving a vehicle while under the influence of intoxicating liquor" the words "or while his ability to operate a vehicle has been impaired due to the consumption of intoxicating liquor". It is nevertheless clearly the

no other purpose.[15] In the context of an arrest for
"driving a vehicle while under the influence of
intoxicating liquor", advice that results of a con-
sensual test will be used to determine the inno-
cence or guilt of the driver means innocence or
guilt of the offense for which the driver was ar-
rested.[16]

The Secretary of State who, pursuant to the
power granted to him,[17] has prescribed the advice
of rights to be given by police officers to persons
arrested pursuant to §§ 625a–625 of the Michigan
Vehicle Code, appears to have placed that con-
struction on the statute.[18] The arresting officer is

---

sense of the amendments that §§ 625 and 625a should be read as if
such conforming amendments had been made.

[15] *Cf. People v Moore,* 395 Mich 643; 237 NW2d 464 (1975) (a
manslaughter prosecution) with *People v Koval,* 371 Mich 453; 124
NW2d 274 (1963) (a DUIL prosecution).

[16] Unless the driver is arrested for driving while under the influ-
ence of intoxicating liquor no such advice can properly be given. *See*
MCLA 257.625c(1)(a); MSA 9.2325(3)(1)(a).

[17] Section 625d was amended in 1968 to provide that "[t]he form of
the report shall be prescribed and furnished by the department of
state". 1968 PA 335.

[18] The following appears on the reverse side of the Officer's Sworn
Report of Refusal to Submit to Chemical Test:

"Advice of Rights for Chemical Test

"(The following Advice of Rights shall be read to all persons
arrested pursuant to Section 625(a)–(f) of Act 300 of 1949, as
amended)

"I am a law enforcement officer and pursuant to law I am hereby
advising you that you have been arrested for the offense of driving a
motor vehicle upon the highways of this state while under the
influence of intoxicating liquor or while your ability to operate a
motor vehicle has been impaired due to the consumption of intoxicat-
ing liquor. I am further advising you of your right to take a chemical
test to determine the alcoholic content of your person through analy-
sis of a specimen of your blood, breath, urine, or saliva; and further I
am offering you such a chemical test and requesting that you take a
chemical test. I further advise you that you have the following rights:

"(1) That the results of such tests shall be admissible and shall be
considered with other competent evidence in determining your guilt
or innocence in any prosecution relating to your driving a vehicle
while either under the influence of intoxicating liquor or while your
ability to operate a vehicle was impaired due to the consumption of
intoxicating liquor.

required to advise the driver:

(a) "You have been arrested for the offense of driving a motor vehicle upon the highways of this state while under the influence of intoxicating liquor or while your ability to operate a motor vehicle has been impaired due to the consumption of intoxicating liquor."

(b) "I am further advising you of your right to take a chemical test to determine the alcoholic content of your person * * * ".

(c) "I further advise you  * * *  that the results of such tests shall be admissible and shall be considered with other competent evidence in determining your guilt or innocence in any prosecution relating to your driving a vehicle while either under the influence of intoxicating liquor or while your ability to operate a vehicle was impaired due to the consumption of intoxicating liquor."[19]

---

"(2) That you have a right to refuse to take any such tests, and if you so refuse, no tests shall be given to you.

"(3) That your refusal to take a test as provided may result in the suspension or revocation of your operator's or chauffeur's license or operating privilege.

"(4) Notwithstanding any other provision mentioned herein or anything else, you have the option to demand that only a breath test shall be given you, in which case your refusal to submit to any other test shall not constitute a refusal to take a chemical test.

"(5) That after taking a chemical test, administered at the request or direction of a law enforcement officer, you have a reasonable opportunity to have a person of your own choosing administer one of said chemical tests, within a reasonable time of detention, and that the results of such test shall be admissible and shall be considered with other competent evidence in determining your guilt or innocence in any prosecution relating to your driving a vehicle while either under the influence of intoxicating liquor or while your ability to operate a vehicle was impaired due to the consumption of intoxicating liquor.

"(6) Regardless of any other provision, if you are afflicted with hemophilia, diabetes or any condition requiring the use of an anti-coagulant under the direction of a physician, you need not consent to a withdrawal of your blood, but may take a urine or a breath test."

The sworn report contains the statement: "I read to him the contents of the *Advise [sic] of Rights for Chemical Test* on the reverse side hereof".

[19] *Id.*

A driver advised that he has been arrested for
DUIL or for DI and that if he consents to a
chemical test the test results shall be admissible
and shall be considered evidence in determining
his guilt or innocence in any prosecution for driv-
ing a vehicle while "either" under the influence of
intoxicating liquor or while his ability to operate a
vehicle was impaired through intoxication would
justifiably conclude that if he were to consent to
the requested test the test results would only be
used in a prosecution for the offense for which he
was arrested and that his consent obtained on that
understanding would not warrant use of the test
results for other purposes.

It would exceed the scope of the consent given to
allow test results obtained on the representation
that they will be used in prosecutions where the
maximum penalty for a first offender is 90 days
imprisonment to be used in prosecutions for a
felony with a maximum penalty of 15 years.[20]

A police officer has no statutory authority to
request that a driver submit to a blood alcohol test
unless the arrest is for driving under the influence
of intoxicating liquor. The officer is required to
advise the driver that if he consents to a test, the

[20] Section 625 provides that for conviction of driving under the
influence a person shall be punished by imprisonment for not more
than 90 days or by a fine of not less that $50 nor more than $100, or
both. On a second conviction the offender may be punished by
imprisonment for not more than one year and a fine of not more than
$1,000. On a third or subsequent conviction within a period of ten
years the offender shall be deemed guilty of a felony. Under MCLA
750.503; MSA 28.771, he may on that account be punished by impris-
onment for not more than four years.

Section 625b provides that a person convicted of driving while
impaired may be imprisoned for not more than 90 days or fined not
more than $100, or both, together with the costs of the prosecution.
On a second and subsequent conviction he may be imprisoned for not
more than one year or fined not to exceed $1,000, or both.

The maximum sentence for manslaughter is 15 years imprison-
ment. MCLA 750.321; MSA 28.553.

test results shall be admissible in DUIL and driving while impaired prosecutions. Test results obtained following consent obtained on that advice cannot properly be used in a prosecution for manslaughter. The test results are not admissible in this case.

We intimate no opinion on the continued viability of *Lebel. Lebel* does not preclude the Legislature from broadening the admissibility of test results where the driver consents to a test.

## V

The Court of Appeals held that by reason of *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), the defendant's past driving convictions and any other misdemeanor convictions could not be used at the trial solely for impeachment purposes. Keen states that he "fears the attempt will be made to introduce these items on a 'pattern, habit or custom' basis". The prosecutor counters that since the people have not had a hearing on the prosecutor's theory for such use, the issue "is untimely, premature and not ripe for decision" by this Court. We agree that since the issue has not been developed at the trial level, it is not properly before us, but do not wish to be understood as approving or disapproving of such use.

The Court of Appeals is reversed and the cause is remanded for trial.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, FITZGERALD, LINDEMER, and RYAN, JJ., concurred with LEVIN, J.

COLEMAN, J. *(concurring).* I agree with Justice LEVIN that the statutes limit the use that may be made of information obtained under the implied

consent law. I wish to emphasize that *Keen* concerns a criminal prosecution and, under the statute, the test results could not be used in a prosecution for manslaughter. The use of the test in civil litigation is not at issue and is not encompassed by this concurrence.

LINDEMER, J., concurred with COLEMAN, J.