**Norman McKINNEY, Plaintiff-Appellant,**

v.

**Michael GALVIN and The City of Troy, Defendants-Appellees.**

No. 81–1472.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 11, 1983.

Decided March 2, 1983.

As Amended March 8, 1983.

Robert J. Dinges, Glotta, Adelman, Dinges, Davis, Riley, Hugh M. Davis, Jr. (argued), Detroit, Mich., for plaintiff-appellant.

Bernard P. McClorey, Susan D. Nelson, Ethan Vinson (argued), Livonia, Mich., for defendants-appellees.

Before KENNEDY and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Norman McKinney appeals from a jury verdict in favor of the defendants in this § 1983[1] action for false arrest, use of excessive force in effecting the arrest, and illegal search and seizure. He contends that he is entitled to a new trial because of error in admitting evidence of his refusal to submit to a breathalyzer test. In the alternative, he contends that having admitted evidence of his refusal to submit to the breathalyzer test, the District Court erred in excluding evidence of the dispositions in appellant's favor of the state administrative and criminal proceedings which followed his arrest. We find no error in admitting the evidence relating to the offer and refusal of the breathalyzer test and affirm the judgment of the District Court.

Appellant Norman McKinney was arrested on March 26, 1979, by appellee Michael Galvin, a police officer for the City of Troy, Michigan, and charged with driving under the influence of intoxicating liquor.[2] Contending that his civil rights had been violated in the course of his arrest, McKinney instituted a *pro se* action in the United States District Court for the Eastern District of Michigan, alleging false arrest, use of excessive force in effecting the arrest, illegal search and seizure, and malicious prosecution. McKinney failed to advance his claims of malicious prosecution in either the joint pretrial statement or his theory of the case. Consequently, the Dis-

---

1. 42 U.S.C. § 1983.

2. Mich.Comp.Laws Ann. § 257.625(a) (amended 1983) provides in pertinent part:

 Persons proscribed. It shall be unlawful and punishable as provided in subsections (c) and (d) for a person, whether licensed or not, who is under the influence of intoxicating liquor or a controlled substance, or a combination thereof, to drive a vehicle upon a highway or other place open to the general pub-

trict Court considered the claims abandoned under Fed.R.Civ.P. 16.[3]

■ Having determined that McKinney had abandoned his claims of malicious prosecution, which would have required proof of favorable disposition, the District Court exercised its discretion to exclude as more prejudicial than probative[4] evidence that the Secretary of State had restored McKinney's license and that McKinney had been acquitted by a jury on the charge of driving under the influence of intoxicating liquor. This evidentiary ruling was not erroneous.[5] Thus, we address only the question of the propriety of admitting into evidence Officer Galvin's offer and appellant's refusal to submit to a breathalyzer test.[6] The propri-

ety of eliciting testimony regarding the "offer" and the "refusal" shall be addressed as separate and distinct evidentiary issues.

## Offer

■ The District Court admitted the evidence of the offer of the breathalyzer test as tending to prove Officer Galvin's good faith at the time of the arrest. Appellant contends that because the offer occurred at the Troy Police Station some time after Officer Galvin had purportedly violated appellant's constitutional rights, it was irrelevant. We disagree. One of the most hotly disputed factual issues at trial was whether appellant was intoxicated as the officer

---

lic, including an area designated for the parking of motor vehicles, within this state.

**3.** A party's failure to advance theories of recovery in the pre-trial statement constitutes waiver. *Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982.) *See also Union Planters National Bank v. Commercial Credit,* 651 F.2d 1174, 1188 (6th Cir.), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981).

**4.** Federal Rule of Evidence 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**5.** Although relying on a variety of principles to support the conclusion, commentators favor excluding evidence of prior acquittals and prior civil judgments. "Technically, the record of a prior judgment does fall within the usual definition of hearsay insofar as it is used to demonstrate the findings of fact supporting it, for it is evidence of assertions made outside the civil trial, offered to show the truth of the matters alleged, and deriving its probative value partially from the credibility and capacity of the absent asserter." 4 *Weinstein's Evidence* ¶ 803(22)[01], p. 803–271, n. 3, citing Note, "Use of Record of Criminal Conviction in Subsequent Civil Action Arising from the Same Facts as the Prosecution," 64 Mich.L.Rev. 702, 703 (1966). "Judgments of acquittal are almost always excluded because of a lack of relevancy since they do not necessarily prove innocence but may indicate only that the prosecution failed to meet its burden of proof beyond a reasonable doubt as to at least one element of the crime." *Id.,* at 803–275. Although an exception allows for the admission of convictions, *see* Fed.R.Evid. 803(22), "[t]he rule does not

apply to judgements of acquital [sic]. They establish only that either the jury is not convinced beyond a reasonable doubt that the material propositions of fact have been established or that the jury is excercising [sic] its inherent mercy dispensing power. In either event, the defendant can not claim that the contrary of the material propositions of fact have been found as a result of a judgement of acquital [sic]." *Id.,* 803–280. Additionally, "[p]rior civil judgments are inadmissible, except to the limited extent provided by Rule 803(23), or as given effect by the substantive doctrine of res judicata which lies outside the scope of rules of evidence. Civil judgments are not given evidential effect because the lower applicable burden of proof makes them less reliable than criminal judgments." *Id.,* at 803–274–803–275.

**6.** Evidence pertaining to the breathalyzer test was admitted at two points in the trial. First, upon examination of McKinney by defense counsel:

Q: I have only one more question.
When you went to the police station from the scene of this incident in the company of officer Galvin, were you offered the right or the opportunity to take a breathalyzer test?
A: Yes.
Q: And did you take the test?
A: No, I did not.
(Tr. 12/16/80; JA: 160).
Second, upon examination of Officer Galvin by defense counsel:
Q: When you reached the police station, did you offer Mr. McKinney the opportunity to take whan [sic] is known as a breathalyzer exam?
A: Yes.
Q: His response?
A: No, no, he wouldn't. He refused.
(Tr. 12/17/80; JA: 82).

claimed, or sober as appellant claimed. The relevance of Officer Galvin's offer is illumined by considering that his failure to offer the test would have supported an inference of bad faith, that is, he feared the test would substantiate appellant's claim of sobriety. The converse is equally true. The offer of the test tends to prove that he believed the results would show intoxication. Accordingly, the District Court properly ruled that the fact that the offer had occurred after the purported § 1983 violations did not *per se* dispose of its relevance.

**Refusal**

Appellant likewise contests the relevancy of his refusal to submit to the breathalyzer test because it occurred after the purported § 1983 violations. Appellant's unexplained refusal to take a test which would prove his sobriety tended to show that Officer Galvin believed in good faith appellant was intoxicated. Also, his unexplained refusal suggests a consciousness of guilt. Accordingly, evidence of appellant's refusal was relevant.

In addition to raising evidentiary challenges based upon relevance (Fed.R.Evid. 401) and prejudicial impact (Fed.R.Evid. 403), appellant argues that evidence of his refusal to submit to the breathalyzer test was prohibited by Mich.Comp.Laws Ann. § 257.625 *et seq.* under the rationale of *McNitt v. Citco Drilling Co.,* 397 Mich. 384, 245 N.W.2d 18 (1976); *People v. Keen,* 396 Mich. 573, 242 N.W.2d 405 (1976); and *People v. Hayes,* 64 Mich.App. 203, 235 N.W.2d 182 (1975), *lv. denied,* 397 Mich. 816 (1976). *McNitt* and *Keen* are inapposite. *McNitt* was consolidated with *Gilbert v. Leach* [appearing at 62 Mich.App. 722, 233 N.W.2d 840 (1975)] and held inadmissible in a subsequent civil action the result of a blood alcohol test administered without the consent of the driver. The decision was based solely upon the unconsented touching that occurred in taking the blood. In *Keen,* the court questioned whether the result of a blood alcohol test was admissible in a manslaughter action. Again focusing upon the

language of the statute, the Michigan Supreme Court reasoned that consensual test results are admissible only for the limited purpose upon which the consent was conditioned. In other words, when Keen consented to the blood alcohol test, he did so with the understanding that the result would be admissible only for the purpose of determining his guilt or innocence in a prosecution for driving a vehicle while under the influence of intoxicating liquor (DUIL), or for driving while his ability to operate a vehicle was impaired due to the consumption of intoxicating liquor (DI). Consequently, the test results were held inadmissible in any *criminal* prosecution other than for DUIL or DI.

*Hayes,* which was consolidated with *People v. Allen* [appearing at 64 Mich.App. 203, 235 N.W.2d 182 (1975)], is the only case relied upon by appellant which addresses the question of admitting evidence of a driver's *refusal* to submit to a breathalyzer test. Even *Hayes* is factually distinguishable from the instant case, however, in that the government was seeking to admit evidence of refusal in a criminal prosecution for driving DUIL or DI. Expressly declining to decide the case on the constitutional assertion that admitting evidence of defendant's refusal would violate his privilege against self-incrimination guaranteed by the United States and Michigan Constitutions (U.S. Const., Am. V, Const. 1963, art. 1, § 17), the Michigan Court of Appeals held the evidence inadmissible on grounds of "fundamental fairness and evidentiary considerations." *Hayes, supra,* at 208, 235 N.W.2d 182.

The Court examined the recent history of Michigan's drunk driving law, particularly section 625(a). It noted that prior to 1967 the statute provided in pertinent part:

(4) The person charged shall be advised of his right to refuse to take any test provided for in this act *and the refusal on the part of any person to submit to any such test shall not be admissible in any criminal prosecution relating to driving a*

*vehicle while under the influence of intoxicating liquor.*[7] (emphasis added).

In 1967 the language was amended by 1967 Pub. Act 253 to read:

> (4) The person charged shall be advised that his refusal to take a test as herein provided shall result in the suspension or revocation of his operator's or chauffeur's license or his operating privilege.

The court reasoned that by deleting that portion of the statute which prohibited admitting evidence of a defendant's refusal, and by inserting a penalty for such refusal, the Legislature "specified license revocation as the consequence for refusing to take an intoxication test." *Hayes, supra,* at 208, 235 N.W.2d 182. Accordingly, it declined to "find the admission of a defendant's refusal to be an added consequence in the absence of a definitive legislative provision to that effect." *Id.*

Additionally, the court reasoned that the Legislature had provided the accused with a choice which would be rendered illusory by interpreting the statute to mean that the defendant could either submit to a test which would definitively establish his guilt or innocence, or refuse the test and face the likely consequence that a jury would infer guilt. The appellate court further found no evidentiary basis for admitting evidence of a defendant's refusal to submit to the test. Relying upon Michigan Rule of Evidence 403, it concluded that "the probative value of such evidence [would] be too low in comparison to its prejudicial effect." (citations omitted) *Id.,* at 209, 235 N.W.2d 182. Finally, the court concluded that no violence would be done to the essential purpose of the laws proscribing drunk driving—keeping intoxicated drivers off the streets[8]—by an interpretation of the statute which provided license revocation as the sole consequence for refusing to submit to an intoxication test. *Id.,* at 210–211, 235 N.W.2d 182.

In a number of other cases Michigan courts have questioned the propriety of eliciting in a criminal proceeding testimony pertaining to a defendant's refusal to submit to chemical analysis.[9] None, however,

---

7. *People v. Reeder,* 370 Mich. 378, 121 N.W.2d 840 (1963), was decided under the pre-1967 language of the statute and required reversal of a conviction for DUIL where evidence of refusal to submit to a blood alcohol test was admitted at trial.

8. *See Collins v. Secretary of State,* 384 Mich. 656, 668, 187 N.W.2d 423 (1971); *Hall v. Secretary of State,* 60 Mich.App. 431, 447, 231 N.W.2d 396 (1975) (dissenting opinion).

9. These cases have relied in large part upon *People v. Gebarowski,* 47 Mich.App. 379, 383, 209 N.W.2d 543 (1975), which held that a "[d]efendant has no right to refuse to take a breathalyzer test." This conclusion was based upon *Schmerber v. California,* 384 U.S. 757, 761 & 765, 86 S.Ct. 1826, 1830 & 1832, 16 L.Ed.2d 908 (1966), where the Supreme Court reasoned that the fifth amendment privilege against self-incrimination does not extend to the results of blood tests.

> We hold that the privilege protects an accused only from being compelled to testify against himself or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.
>
> \* \* \* \* \* \*

Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds.

In its recent decision in *South Dakota v. Mason Henry Neville,* —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Supreme Court addressed the question left open in *Schmerber, supra,* 384 U.S. at 765, n. 9, 86 S.Ct. at 1832, n. 9, and held that admitting in a prosecution for DUIL or DI evidence of a defendant's refusal to submit to a blood-alcohol test did not offend the privilege against self-incrimination. The *Neville* Court grounded its decision not upon the testimonial verses non-testimonial distinction drawn in *Schmerber,* but upon the fact that no impermissible governmental coercion is involved when a suspect refuses to submit to chemical analysis. *Neville, supra,* —— U.S. at ——, 103 S.Ct. at 921.

*Gebarowski, supra,* involved a defendant in a DUIL action contending that she was unconstitutionally coerced into waiving her fifth amendment privilege against self-incrimination. Gebarowski argued that the arresting officer had convinced her that refusal to submit to a breathalyzer test would automatically result in the suspension of her license, although Michigan's drunk driving statute actually provided for a hearing prior to suspension or revocation.

has passed upon the question of admitting that same testimony in a civil proceeding.

 No fifth amendment privilege attaches in the context of a civil proceeding and, consequently, no constitutional issue is presented by McKinney's claim.[10] Additionally, reviewing the history and language of the statute it becomes evident that nowhere does it expressly or impliedly prohibit admitting in a civil action evidence of the defendant's refusal to submit to the test. The concerns of the *Hayes* court with respect to the 1967 amendment are not applicable here because the pre-1967 language of the Act merely prohibited admitting evidence of the defendant's refusal *in any criminal prosecution relating to driving a vehicle while under the influence of intoxicating liquor.* At no time did the Act expressly prohibit its admission in a civil proceeding.[11]

Although we have examined state law at great length it should not be overlooked that the admissibility of evidence in this § 1983 action is controlled by the Federal Rules of Evidence. Under those rules, all relevant evidence is admissible except as otherwise provided by the Constitution, an act of Congress, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed.R.Evid. 402. Appellant has failed to point to any exception which would render evidence of his refusal inadmissible.

As noted by the District Court, the prejudicial impact of any negative inference drawn by the jury from the fact that appellant refused to submit to a breathalyzer test could have been eliminated, or at least greatly reduced, by appellant's testifying as to why he refused to submit to the test, or by a cautionary instruction to the effect that there are valid bases for the refusal to take a breathalyzer test. (Tr. 12/17/80; JA: 65). Appellant had the opportunity to explain his refusal to submit to the exam but, for reasons best known to him or his counsel, he did not do so, nor did he request a cautionary instruction.

Accordingly, the judgment of the District Court is affirmed.

---

The Michigan Court of Appeals concluded that since it is constitutionally permissible for the State to compel the giving of a breathalyzer test, any error committed by the arresting officer during his recitation of the accused's rights under the statute was harmless. *See Hall v. Secretary of State,* 60 Mich.App. 431, 440, 231 N.W.2d 396 (1975) (where the court concluded without explanation that imposition of a compulsory breathalyzer test would be constitutional.)

Distinguishing those cases which have precluded testimony regarding a defendant's refusal to respond in the face of accusatorial remarks during interrogation, *People v. Bobo,* 390 Mich. 355, 212 N.W.2d 190 (1973); *People v. Eastway,* 67 Mich.App. 464, 241 N.W.2d 249 (1974), the Michigan Court of Appeals has held that where there is no constitutional right to refuse to submit to a test, then axiomatically there is no constitutional prohibition against admitting testimony regarding defendant's refusal. *See People v. Taylor,* 73 Mich.App. 139, 142, 250 N.W.2d 570 *lv. denied,* 400 Mich. 813 (1977) (where defendant unsuccessfully appealed from a conviction of forcible rape, challenging the constitutionality of admitting testimony regarding his refusal to take a blood test), citing *People v. Paddock,* 29 N.Y.2d 504, 505, 323 N.Y.2d 976, 977, 272 N.E.2d 486 (1971); *People v. Sudduth,* 65 Cal.2d 543, 546, 55 Cal.Rptr.

393, 395, 421 P.2d 401, 403 (1966); and *State v. Durrant,* 55 Del. 510, 188 A.2d 526 (1963).

**10.** Even assuming *arguendo* that McKinney had exercised a fifth amendment right in refusing to submit to the breathalyzer test, comment on that refusal would be admissible in a subsequent civil proceeding.

[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refused to testify in response to probative evidence offered against them; the Amendment "does not preclude the inference where the privilege is claimed by a *party to a civil cause.* 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961) (emphasis in original).

*Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976) (where the Supreme Court declined to extend the prohibition against comment in a state criminal proceeding, *see Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), to disciplinary proceedings in state prisons).

**11.** We find it unnecessary to pass upon the correctness of the interpretation provided by the *Hayes* court to the meaning of the 1967 amendment.