PEOPLE v WEAVER

1. CRIMINAL LAW—EVIDENCE—BLOOD ALCOHOL TEST—IMPLIED CONSENT—STATUTES.

The results of a blood alcohol test administered pursuant to the "implied consent" statute are admissible only in a prosecution for driving under the influence of intoxicating liquor or for driving while ability to operate a vehicle is impaired due to consumption of intoxicating liquor (MCLA 257.625a *et seq.;* MSA 9.2325[1] *et seq.).*

2. INTOXICATING LIQUORS—BLOOD ALCOHOL TEST—IMPLIED CONSENT.

A blood alcohol test administered to a defendant by hospital personnel at the request of the police was administered pursuant to the implied consent statute where the police did not notify the hospital personnel that the test was not pursuant to statute, the hospital personnel read to the defendant a form clearly designed for use under the statute and which the defendant signed, and the defendant assumed, although he had not been told, that if he refused the test his driver's license would be suspended.

3. INTOXICATING LIQUORS—BLOOD ALCOHOL TEST—IMPLIED CONSENT—COERCIVE EFFECT—DISCLAIMER—STATUTES.

The possibly coercive effect of the "implied consent" statute, under which a driver is faced with the choice of consenting to a blood alcohol test or losing his driving privileges, is great enough to require that a request for a test made pursuant to authority other than the statute must expressly disclaim reliance on the statute and on the statutory penalties for refusal to consent to the test (MCLA 257.625a *et seq.;* MSA 9.2325[1] *et seq.).*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 332, 333.
Admissibility and weight of evidence based on scientific test for intoxication or presence of alcohol in system. 159 ALR 209.
[2–4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 115, 259, 334.
Requiring submission to physical examination or test as violation of constitutional rights. 25 ALR2d 1407.
[5] 40 Am Jur 2d, Homicide § 131.

4. INTOXICATING LIQUORS—BLOOD ALCOHOL TEST—IMPLIED CONSENT—
DISCLAIMER—STATUTES.

Consent to a blood alcohol test obtained from a conscious driver is
considered to have been obtained under color of statutory
authority absent an express disclaimer to the driver of reliance
on the statute and upon statutory penalties, and advice that
the statutory limits on the use of such test results is inapplica-
ble (MCLA 257.625a *et seq.;* MSA 9.2325[1] *et seq.).*

5. CRIMINAL LAW—EVIDENCE—BLOOD ALCOHOL TEST—STATUTES.

Admission into evidence of the results of a blood alcohol test
obtained pursuant to the implied consent statute is erroneous
in a prosecution for negligent homicide (MCLA 257.625a *et seq.;*
MSA 9.2325[1] *et seq.).*

Appeal from Genesee, Philip C. Elliott, J. Sub-
mitted January 12, 1977, at Lansing. (Docket No.
26751.) Decided March 2, 1977.

Robert E. Weaver was convicted of negligent
homicide. Defendant appeals. Reversed and re-
manded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, *Donald A. Kuebler,* Chief,
Appellate Division, and *Joel B. Saxe,* Senior As-
sistant Prosecuting Attorney, for the people.

*Keil, Ransom & Henneke* (by *Charles R. Mc-
Kone),* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and V. J.
BRENNAN and BRONSON, JJ.

BRONSON, J. Defendant was charged with the
misdemeanor of negligent homicide. MCLA
750.324; MSA 28.556. He was found guilty as
charged by a jury on June 11, 1975. On July 29,

1975, he was sentenced to a term of from 16 to 24 months' imprisonment. He now appeals by right. We reverse.

The issue presented concerns the admission into evidence at defendant's trial of the results of certain blood alcohol tests. Defendant asserts that the tests were administered pursuant to the so-called implied consent statute, MCLA 257.625a, *et seq.;* MSA 9.2325(1), *et seq.,* and consequently were inadmissible in any prosecution other than for driving a vehicle under the influence of intoxicating liquor (D.U.I.L.) or for driving while ability to operate a vehicle was impaired due to the consumption of intoxicating liquor (D.I.). Plaintiff asserts to the contrary that the tests were not administered pursuant to that statute and consequently were admissible in this negligent homicide prosecution.

Resolution of this issue requires discussion of some of the facts surrounding the taking of the blood sample from the defendant.

The charge in this case arose out of an automobile collision which resulted in the death of one Jake Brock. The evidence presented at trial indicated that Mr. Brock was killed while attempting to help his son Ronald start one of the family cars, a Camaro. Ronald had been driving the Camaro in the early morning hours of January 15, 1975, when it stalled on North Saginaw Street in Flint, Michigan. Ronald called his father to ask for assistance and Mr. Brock drove to the stranded automobile in his pick-up truck.

The Camaro was standing in the curb lane of northbound Saginaw, at a point where the street was five lanes wide. The elder Mr. Brock determined that the Camaro could be started with help from the pick-up truck's battery. The pick-up was

moved so as to be facing the front of the Camaro, and within about three feet of it.

As Ronald sat in the pick-up truck and his father began to attach battery booster cables between the pick-up and the Camaro, defendant collided with the rear end of the Camaro. The Camaro was smashed against the pick-up truck with Jake Brock between them. Mr. Brock suffered injuries which eventually proved to be fatal.

Police officers who arrived on the scene shortly after the accident testified that the defendant seemed to be dazed, that he smelled of alcohol, that his eyes were red and watery, and that seven empty beer cans and three full ones were found in the back seat of defendant's car.

Deputy David Stanley was one of the police officers on the scene. He conducted a brief investigation and then took the defendant to Hurley Hospital, the same hospital to which Mr. Brock had been taken for treatment.

Deputy Stanley told the defendant that he was taking him to the hospital for a blood test, that they would check on the condition of Mr. Brock, and that there would probably be a criminal prosecution if Mr. Brock were to die.

At the hospital, Mr. Brock was found to be in critical condition, but still alive. Deputy Stanley read *Miranda*[1] rights to the defendant and requested a nurse to obtain a blood sample from the defendant. However, the defendant was not formally arrested or charged at this time.

Upon being requested to obtain a sample of defendant's blood, one of the nurses at the hospital read a form containing the following information to the defendant:

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

"I have been advised and acknowledge that I am not required by law to give my consent to a chemical test of my blood for alcoholic content, and that the results of any chemical test to which I consent may be used in evidence either for or against me in any prosecution relating to my driving a vehicle while under the influence of intoxicating liquor.

"I also have been advised that I may demand a blood alcohol test which must be given to me providing facilities are reasonably available to administer it, and that I am permitted to have such a test administered under the supervision of a physician of my own choosing.

"Having been so advised I give my consent for a test of my blood to determine its alcoholic content."

Defendant signed this form, thereby signifying his consent to the procedure.

A sample of defendant's blood was taken by hospital personnel. Defendant was then released.[2]

Brock subsequently died and defendant was arrested and charged with negligent homicide.

Defendant filed pretrial motions to suppress from evidence the results of tests performed on the blood sample to determine its alcohol content. The motion to suppress was denied, after a hearing, and the test results were admitted at defendant's trial. Defendant was convicted of negligent homicide and now appeals.

As noted, defendant asserts that the blood alcohol tests were administered pursuant to the so-called implied consent statute and consequently were inadmissible in this prosecution for negligent homicide. Defendant relies on *People v Keen*, 396 Mich 573, 575; 242 NW2d 405 (1976), where it was said:

---

[2] Deputy Stanley explained that since Mr. Brock was still alive, he did not feel he had grounds to charge defendant with negligent homicide. He stated that he did not want to charge defendant with a lesser charge for fear of possible double jeopardy problems.

"We hold that where a blood alcohol test is administered pursuant to the statute the test result is not admissible in a criminal prosecution other than for driving while under the influence of intoxicating liquor (DUIL) or for driving while ability to operate a vehicle was impaired due to the consumption of intoxicating liquor (DI)."

In *McNitt v Citco Drilling Co,* 397 Mich 384, 393; 245 NW2d 18 (1976), a subsequent case further construing the statute, the Court held:

"Test results obtained pursuant to the exercise of statutory authority are not admissible unless obtained in conformity with the requirements of the statute."

It is plain that if we determine that the blood alcohol test in this case was "administered pursuant to the statute" or the test results "obtained pursuant to the exercise of statutory authority", phrases which we read as being synonymous, the results were inadmissible in this case. The prosecution was for an offense other than D.U.I.L. or D.I. Moreover, the test results were not obtained in conformity with the statutory requirement and therefore, if obtained pursuant to the statute, were inadmissible for any purpose.[3]

Plaintiff's response to defendant's statutory argument is that the tests were not administered pursuant to the statute and that therefore the statute, as interpreted in *Keen,* cannot act to bar the use of the test results in this prosecution.

Plaintiff argues that defendant was requested to submit to the blood alcohol test pursuant to common law, rather than statutory, authority of the

---

[3] The advice given to defendant prior to obtaining his consent was plainly insufficient under the statute, as it did not inform him that refusal to submit to the test would result in revocation of his operator's license. MCLA 257.625a(4); MSA 9.2325(1)(4).

police officer to request such consent. It is argued that the nonreliance upon and the inapplicability of the statute is evidenced by the facts that (1) defendant was not under arrest for D.U.I.L. or D.I. when asked to submit to the blood test; (2) defendant was not informed that refusal to submit to the test would result in revocation of his driving privileges; and (3) defendant received information indicating that a prosecution might occur if Mr. Brock were to die.

Plaintiff also presents us with arguments to the effect that the test results would be admissible under the Fourth Amendment to the United States Constitution by virtue of the United States Supreme Court decision in *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), and in addition that defendant's consent to the procedure waived whatever protections the Michigan and Federal Constitutions afforded him to avoid such a procedure. We need not reach these issues, however, as we conclude that the blood alcohol tests were administered pursuant to the "implied consent" statute and that the admission of the test results was precluded by that statute.

Plaintiff's argument that the test results were not obtained pursuant to the statute was also made in *McNitt, supra.* That case discussed the admissibility of the results of blood alcohol tests in two separate civil cases. In each case, the blood sample had been taken at the request of a police officer to determine alcohol content and not for diagnostic purposes. *McNitt, supra,* at 390–391. The driver in one of the cases decided in *McNitt* had been unconscious when the blood sample was drawn. The driver in the other case had been found by the trial judge not to have validly consented to the testing procedure.

The Supreme Court did not decide whether blood alcohol tests could be administered outside of the authority of the statute. Rather, the Court said that since the hospital personnel in each case had administered the tests pursuant to the request of a police officer, and since there had been no showing that the hospital personnel had been informed by the police officer that the request was made other than pursuant to the statute, the test results had been obtained "under color of statutory authority". *McNitt, supra,* at 391–392, 394. The Court noted that the tests may not have been given had the hospital personnel realized that the request was not pursuant to statute and that they would not have the resulting statutory protection from civil and criminal liability.[4]

The Court expressly left open the question "whether the statute occupies the field and supersedes the asserted common-law right" to request the hospital personnel to administer a blood alcohol test. *McNitt, supra,* at 392.

The Court went on to say that absent a showing that the police officers, upon requesting the hospital personnel to administer the blood alcohol test, had expressly disclaimed reliance upon the statute, the test results would be considered to have been obtained pursuant to the statute and consequently would be inadmissible in either of the cases considered in *McNitt* since the driver in neither case had received the statutorily required information as to possible use of the test results and right to refuse. The Court reasoned that test results obtained "under the authority of the statute but not in conformity with its terms" could not be granted a wider range of admissibility than

---

4 *See* MCLA 257.625a(2); MSA 9.2325(1)(2).

results obtained in conformity with statutory requirements. *McNitt, supra,* at 392–393.

Implicit in the rationale of *McNitt* is an approach which considers the admissibility of blood alcohol test results in all cases by first determining whether the test results were obtained under authority of the statute. Only if the statutory authority was not involved is the question whether authority exists outside of the statute to administer such tests presented. Finally, only if the latter question is answered in the affirmative, do questions of admissibility under state and Federal constitutional provisions concerning search and seizure become relevant.

It is clear that this case is controlled by *McNitt.* No showing was made below that the hospital personnel were told by the police officer requesting administration of the blood alcohol test that the request was other than pursuant to statute. Indeed, the evidence negatives such a conclusion. The hospital personnel, after receiving the request but before drawing a blood sample from defendant, found it necessary to read to him the previously quoted consent form and to obtain his signature on it. The form was plainly designed for use under the implied consent statute, albeit that it is out of date in that it does not inform defendant that his refusal could result in loss of his driver's license.

We could perhaps rest our opinion on this single ground, that the test *was* administered pursuant to the statute because the hospital personnel were not told otherwise and the test results were consequently inadmissible because defendant did not receive all the advice required by statute and because the prosecution was not for D.U.I.L. or D.I.

The facts of this case, however, require discus-

sion of an additional circumstance indicating that the authority of the statute may have had some influence in the obtaining of these blood alcohol results. As has been noted, defendant was not informed that his refusal would result in revocation of his driver's license. However, defendant testified at the suppression hearing that upon being asked whether he would submit to a blood alcohol test, he had assumed that refusal would have such a result. The trial judge accepted this testimony, but found no significance in it. We think, however, that the rationale behind the Supreme Court decisions in *Keen* and *McNitt* render this circumstance to be of controlling importance in determining whether the test results were obtained pursuant to statute, so as to both limit the use which may be made of those results and to preclude their use entirely where the statutory procedure has not been followed.

This conclusion is necessitated by the whole purpose behind the so-called "implied consent" law. As Justice LEVIN pointed out in both *McNitt* and *Keen,* the statute does not really imply consent on the part of anyone to submit to a blood test. The statute clearly states that no test shall be given to the driver who refuses to consent.[5] If consent is implied to anything, it is merely to being faced with choosing between submitting to a test and facing revocation of one's driver's license.

Where consent is actually given to a request made under the statute, the effect of the statute is more correctly perceived as deeming that consent to be voluntary for the limited purposes of D.U.I.L. or D.I. prosecutions, despite the coercive effect of the threat of license revocation upon refusal to consent. At the same time, the statute may fairly be read as being designed to carefully limit the use

[5] MCLA 257.625d; MSA 9.2325(4).

which may be made of blood tests obtained pursuant to such "consent" and as forbidding, in all other instances, the use of test results obtained by the statutory coercion.

Just as the hospital personnel may have refused to administer the blood alcohol tests upon request had they known that the request was not made pursuant to the statute, so also might this defendant have refused to consent had he realized that the request was *not* made pursuant to statute and refusal would *not* result in revocation of his license. The possibility of the statute exerting such a coercive effect, and thereby aiding in the obtaining of the test results, is great enough to require that a request for a blood alcohol test made pursuant to authority other than the statute must expressly disclaim reliance on the statute and the statutory penalties for refusal.

As the Supreme Court in *McNitt* held that a blood alcohol test is obtained pursuant to the statutory authority absent express disclaimer to the hospital personnel asked to administer that test, so do we hold that consent to a blood alcohol test obtained from a conscious driver will be considered to have been obtained under color of the statutory authority absent express disclaimer to the driver of reliance on the statute and upon statutory penalties, and advice that the statutory limits on the use to which such test results may be put is inapplicable.

It follows from the foregoing that the admission of the blood alcohol test results into evidence in this prosecution for negligent homicide was erroneous. We have considered plaintiff's claim of harmless error but cannot say beyond a reasonable doubt that the error did not affect the outcome in the trial court. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Reversed and remanded for a new trial.