PEOPLE v CARTER

Opinion of the Court

1. Criminal Law—Evidence—Intoxication—Blood Alcohol Test—
    Admissibility—Prerequisites for Admission.

   The prerequisites for the admission into evidence of chemical
   tests to determine the blood alcohol level include establishing
   the qualifications of the operator administering the test, the
   method or procedure followed in administering the test, that
   the test was performed within a reasonable time after the
   arrest, and the reliability of the testing device.

2. Criminal Law—Evidence—Blood Alcohol Test—Implied Con-
    sent—Statutes.

   The result of a blood alcohol test which is administered pursuant
   to the "implied consent law" is not admissible in a criminal
   prosecution other than for driving while under the influence of
   intoxicating liquor, or for driving while ability to operate a
   vehicle was impaired due to the consumption of intoxicating
   liquor (MCLA 257.625c *et seq.;* MSA 9.2325[3] *et seq.).*

3. Appeal and Error—Criminal Law—Evidence—Blood Alcohol
    Test—Bench Trials—Intoxication—Involuntary Man-
    slaughter.

   Error in the admission and consideration of blood alcohol test
   results in a bench trial for involuntary manslaughter consti-
   tutes manifest injustice and mandates reversal where the trial
   judge stated that he based his findings of intoxication primarily
   upon the conduct of the automobile at the scene and the
   testimony of the officers attending the scene, but nevertheless
   found as a fact that defendant operated his motor vehicle while
   under the influence of intoxicating liquor and while doing so
   caused the death of the deceased, and where the court took the

References for Points in Headnotes
[1–5] 29 Am Jur 2d, Evidence §§ 823–825, 830.
   30 Am Jur 2d, Evidence § 1104.
   31 Am Jur 2d, Expert and Opinion Evidence §§ 26–32.
   Qualification as expert to testify as to findings or results of scientific
   test to determine alcoholic content of blood. 77 ALR2d 971.

blood alcohol test results into consideration in reaching its
determination of intoxication.

4. WITNESSES—EXPERT WITNESSES—CREDENTIALS—EXPERT OPINIONS.

An expert witness need not possess professional academic creden-
tials in order to be qualified to express an expert opinion.

DISSENT BY J. H. GILLIS, P. J.

5. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—BLOOD ALCOHOL
TEST—BENCH TRIALS—INVOLUNTARY MANSLAUGHTER—INTOXI-
CATION—JURY TRIALS.

Admission and consideration of blood alcohol test results in a
bench trial for involuntary manslaughter is not reversible error
where the judge stated that he made his finding of intoxication
based primarily on the testimony of the police officers who were
at the scene; the introduction of such test results in a jury trial
for the same offense would be reversible error.

Appeal from Oakland, Frederick C. Ziem, J.
Submitted December 13, 1976, at Lansing. (Docket
No. 27368.) Decided December 20, 1977. In lieu of
leave to appeal, judgment amended so as to re-
verse the defendant's conviction, but remanded to
the Oakland Circuit Court for reconsideration and
reevaluation of the original trial record, 402 Mich
—.

John W. Carter was convicted of involuntary
manslaughter. Defendant appeals. Reversed and
remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *L. Brooks Patterson,*
Prosecuting Attorney, *Robert C. Williams,* Chief
Appellate Counsel, and *T. Michael McLarry,* As-
sistant Appellate Counsel, for the people.

*Paul G. Valentino, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and M. F. CAVANAGH
and D. E. HOLBROOK, JR., JJ.

M. F. CAVANAGH, J. Defendant was convicted on
a charge of involuntary manslaughter, MCLA
750.321; MSA 28.553, after a bench trial on Au-
gust 4, 1975. On August 26, 1975, he was sen-

tenced to 5 year's probation and a suspended 6-
month term in the Oakland County Jail. His driv-
ing privileges were revoked during his period of
probation. Defendant appeals as of right.

The evidence at trial showed that the deceased,
Robert Kuechle, was struck and killed by a car
while jogging across Andersonville Road on the
night of January 11, 1975. Shortly thereafter,
defendant's car was stopped at a roadblock set up
to protect the scene of the accident. An on-the-
scene comparison of automobile fragments found
on the road and recent damage done to the right
front of the defendant's car indicated that the
defendant's car was the one involved in the acci-
dent. Upon his arrest, defendant appeared to be
intoxicated, and he was taken to the Oakland
County Jail, where he consented to a Breathalyzer
test.[1] The results of the test indicated that the
defendant's blood alcohol level at the time of
arrest was .25%, and were admitted into evidence
over defense counsel's objection. Sheriff's deputy
Gelinas testified over defense objection that the
pieces of metal and plastic found at the scene of
the accident matched parts of the defendant's
automobile.

In finding the defendant guilty of manslaughter,
the trial court emphasized the testimony of the
police officers at the scene and the witnesses'
observations of the manner of operation of the car
that struck the deceased.

The defendant argues that the prosecutor failed
to establish a foundation for the reliability of the
testing device adequate to justify admission of the
Breathalyzer results. We agree with the defendant

[1] The record shows that the defendant consented to the test pursu-
ant to the statutory procedure contained in the "implied consent"
statute, MCLA 257.625c *et seq.;* MSA 9.2325(3) *et seq.*

that the applicable rule is found in *People v Krulikowski,* 60 Mich App 28; 230 NW2d 290 (1975), and *People v Kozar,* 54 Mich App 503; 221 NW2d 170 (1974). The prerequisites for admissibility of the results of chemical tests to determine the blood alcohol level include "establishing the qualifications of the operator administering the test, the method or procedure followed in administering the test, that the test was performed within a reasonable time after the arrest, *and the reliability of the testing device".* (Emphasis added.) *People v Kozar, supra,* at 509, n 2; 221 NW2d at 173, n 2.

Unlike *People v Krulikowski, supra,* in this case there was sufficient testimony from the Breathalyzer operator to show the reliability of the particular device used. Deputy Adkins testified that the instrument was checked out weekly by a Breathalyzer operator and inspected by the State Police at least once every 90 days. Controlled test samples were furnished for this purpose by the State Department of Health. The trial court did not abuse its discretion in holding that an adequate foundation had been established for the test result's admission. *People v Krulikowski, supra,* at 33; 230 NW2d at 293.

A more troublesome issue is raised by the use of the Breathalyzer tests in a trial on a manslaughter charge. Our Supreme Court held in *People v Keen,* 396 Mich 573, 575; 242 NW2d 405, 407 (1976), that "where a blood alcohol test is administered pursuant to the statute[2] the test result is not admissible in a criminal prosecution other than for driving while under the influence of intoxicating liquor (DUIL) or for driving while ability to operate a vehicle was impaired due to the consumption

---

[2] MCLA 257.625c *et seq.;* MSA 9.2325(3) *et seq.*

of intoxicating liquor (DI)". (Footnotes in text omitted.)

We view *Keen, supra,* not as pronouncing a new interpretation of the so-called implied consent statute, MCLA 257.625a *et seq.;* MSA 9.2325(1) *et seq.,* but rather, as merely stating that which the law had always been. Therefore, *Keen, supra,* is applicable to the instant case. See also *People v Weaver,* 74 Mich App 53; 253 NW2d 359 (1977), where a panel of this Court applied the law in *Keen, supra,* to a *pre-Keen* conviction for negligent homicide which conviction took place nearly two months prior to defendant Carter's conviction in this case.

We therefore hold that the admission of the Breathalyzer test as evidence in the instant case constitutes error. The sole question remaining is whether such error resulted in manifest injustice because defense counsel failed to object on the specific ground that such tests are not admissible in manslaughter prosecutions.

A review of the trial transcript reveals that counsel were aware of this Court's decision in *People v Keen,* 56 Mich App 84; 223 NW2d 700 (1974), since the prosecutor specifically stated on the record that such case stood for the proposition that the results of Breathalyzer tests are admissible in manslaughter prosecutions. While the above decision was subsequently reversed by the Supreme Court at 396 Mich 573; 242 NW2d 405 (1976), defense counsel could not fairly have been expected to be prescient. Hence, his failure to object is understandable.

In reviewing the prosecutor's closing argument it is noted that he specifically directed the trial court's attention to the .10 per cent presumption of intoxication set forth in the statute. Moreover

the prosecutor strenuously argued that: defendant Carter's blood alcohol content was 2-1/2 times the level required for a presumption of legal intoxication; defendant came forward with no evidence to rebut the statutory presumption of intoxication; the Breathalyzer test results indicated that defendant's failure to stop was the direct result of his intoxication; and defendant's intoxication, standing alone, was sufficient to justify a finding of guilt.

While it is true the trial judge stated that he based his findings of intoxication *primarily* upon the conduct of the automobile at the scene and the testimony of the officers attending the scene, he nevertheless found as fact that defendant operated his motor vehicle while under the influence of intoxicating liquor and, while doing so, caused the death of Robert Kuechle. Furthermore, the trial court, in its determination of intoxication, took into consideration the Breathalyzer test results.[3]

---

[3] "Considering all of the evidence in this case, this Court makes a finding that the deceased, Robert Kuechle, was killed in this accident; the cause of death was as set forth in Exhibit One.

"This Court makes a finding that this Defendant—the People have met the burden of proof that the Defendant was intoxicated, or under the influence of intoxicating liquor, and this Court bases this *primarily* upon the conduct of the automobile, at the scene, and the testimony of the officers, at the scene.

"The conduct of the automobile at the scene indicates that no horn was sounded; there was no reduction of speed in an area which called for the reduction of speed, with automobiles parked on both sides of the road; the automobile did not swerve to avoid the deceased, Robert Kuechle; the automobile did not immediately stop at the scene, although the driver must have been—it must have been obvious to the driver that the automobile had struck something, due to the body being thrown as far as it was, up against two other automobiles, as the testimony indicates.

"The testimony of the officers at the scene, concerning the condition of the Defendant at the time he was—came by the scene and was talked to by the officers—I'm referring, particularly, to Officer Guglielmello and Officer Decker.

"*Thirdly, the Breathalyzer Test is a factor which this Court took into consideration, but the testimony of the Breathalyzer Test, stand-*

While the court stated that standing alone such would not convince the court as to defendant's intoxication, it failed to state what its finding would have been absent same being received and considered. On this record, we doubt that the court refrained from giving significant weight to evidence showing defendant's blood alcohol content to be .25 per cent; 2-1/2 times the presumptive level of legal intoxication.

When the above is considered in conjunction with the prosecution's closing argument, it is difficult to state that the test results did not constitute that evidence which convinced the trial judge beyond a reasonable doubt as to defendant's intoxication and guilt. While the trial court's finding of intoxication was based primarily upon other evidence, it was not based wholly thereon, for the Breathalyzer results were admittedly considered. We conclude therefore that the error in the admission and consideration of the test results constitutes manifest injustice and mandates reversal.

The defendant lastly claims that the trial court erred in allowing Deputy Gelinas, a crime scene investigation technician, to express his opinion on the match between pieces of metal and plastic found at the accident scene and a part from the defendant's automobile.

---

*ing alone, would not convince this Court that this Defendant was under the influence of intoxicating beverages.*

"But, *primarily,* I base my decision upon the conduct of the automobile at the scene, and the testimony of the officers who were at the scene, to-wit: Deputy Guglielmello and Deputy Decker.

"This Court, therefore, concludes that the People have proven beyond a reasonable doubt that this Defendant operated his automobile, on January 11, 1975, on Andersonville Road, in a careless, reckless, grossly negligent and unlawful manner, and in a manner likely to endanger the lives, safety and welfare of other persons. And that he operated the motor vehicle while under the influence of intoxicating liquor, and, in doing so, caused the death of Robert Kuechle.

"The Court, therefore, finds that this Defendant is guilty of Manslaughter, as charged in the Information." (Emphasis supplied.)

The record shows that Deputy Gelinas had received considerable training and practical experience in physical identification and match-ups of debris found at the scene of an accident. The trial court did not abuse its discretion in finding him qualified to express his reasoned opinion on the match between the parts. It is well-established that an expert need not possess professional academic credentials in order to be qualified to express an expert opinion. *O'Dowd v Linehan,* 385 Mich 491, 509; 189 NW2d 333, 342 (1971). Admission of his testimony was not error.

Reversed and remanded.

D. E. HOLBROOK, JR., J., concurred.

J. H. GILLIS, P. J. *(dissenting).* While I agree with most of the facts and conclusions set forth in the majority opinion, I dissent for the reason that this was a nonjury trial and I gave a great deal of credence to the statement of the trial court that his findings were based primarily on the testimony of the officers who were at the scene.

Had this been a jury trial, I would have to agree with my colleagues that the introduction of the Breathalyzer test was reversible error.

When the learned trial court stated his primary basis for convicting the defendant I relied on that statement and for that reason I would vote to affirm the conviction.